**BENDERSON DEVELOPMENT COMPANY, INC., Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant–Appellee.**

No. 92–1554.

United States Court of Appeals, Federal Circuit.

July 8, 1993.

---

Harold M. Halpern, Borins, Halpern & Stromberg, Buffalo, NY, argued, for plaintiff-appellant.

Peter A. Appel, Dept. of Justice, Washington, DC, argued, for defendant-appellee. Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Department of Justice, Washington, DC, were on the brief, for defendant-appellee. Of counsel was J. Carol Williams, Dept. of Justice. Also on the brief, were Stephen J. Powell, Chief Counsel, Berniece A. Browne, Sr. Counsel and Stephen J. Claeys, Attorney–Adviser, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.

Before PLAGER, LOURIE and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Benderson Development Company, Inc. appeals from an order of the United States District Court for the Western District of New York transferring Benderson's complaint against the United States Postal Service to the United States Court of Federal Claims.[1] *Benderson Dev. Co. v. United States Postal Serv.,* 91–CV–794E(M), 1992 WL 210065 (W.D.N.Y. Aug. 19, 1992). The district court concluded that Benderson's complaint falls under the exclusive jurisdiction of the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491 (1988), having characterized Benderson's action against the Postal Service as claiming compensation in excess of $10,000 for inverse condemnation of an interest in real property. Because Benderson's action may not be so construed absent evidence of a decision by the Postal Service to condemn inversely a property interest remaining in Benderson, we vacate and remand.

## I

The Postal Service planned to build a new mail carrier facility in Buffalo, New York so it solicited offers to sell real estate on which to build the desired facility. In August 1987, Benderson offered to sell the Postal Service a particular piece of real property that was part of a larger parcel. Benderson's offer to sell stated that the rights and interests attached as Schedule C to the offer would be excepted and reserved. Schedule C provided:

> The parties agree that no improvements shall be made to the subject premises which will impair the visibility of the Plaza except for the buildings and improvements on Schedule B and a six (6) foot chain link fence located on the cross-hatched area on Schedule B, together with landscaping all around said area.

Schedule B contained the Postal Service's proposed development plan for the site setting forth the size, configuration and location of the building that the Postal Service planned to construct. Benderson apparently wanted to ensure that the Postal Service's building would not impair the visibility of a commercial development Benderson was planning to build on the remainder of the

---

1. The district court transferred the case to the "United States Court of Claims." Congress transferred the trial functions of the Court of Claims to the United States Claims Court in 1982. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133, 96 Stat. 39–41. The United States Claims Court is now known as the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

parcel. In September 1987, the Postal Service decided to purchase the particular property from Benderson by accepting Benderson's offer to sell.

Benderson drafted the deeds for the property, and then effected the sale of the property in October 1987 by conveying it first to its attorney who then conveyed the property to the Postal Service. Neither deed contained the restrictions that appeared in Schedule C of Benderson's offer to sell real property.

In 1988, the Postal Service proposed a number of changes in the location and configuration of its planned building. Benderson objected to the changes claiming that they would interfere with its plans to develop the remaining portion of the parcel. When negotiations between the parties foundered, the Postal Service began to construct its building in accordance with its modified plans. Soon thereafter Benderson filed suit against the Postal Service in the New York Supreme Court. Its complaint stated two causes of action. First, Benderson requested equitable relief asking that the Postal Service

> be compelled to remove all improvements constructed in violation of the agreement between the parties and permanently enjoined from erecting, maintaining or attempting to erect or maintain any improvements except such as set forth on Schedule B of the agreement.

Second, absent injunctive relief, Benderson requested damages in the amount of $500,-000.

In December 1988, the Postal Service removed the action to the Western District of New York pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1) & 1446 (1988). After discovery, the Postal Service moved to dismiss Benderson's complaint for lack of jurisdiction asserting that Benderson's claim was actually a claim for the taking of property without just compensation under the Fifth Amendment of the United States Constitution, a claim that belonged in the United States Court of Federal Claims under the Tucker Act because it exceeded $10,000. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (1988). The Postal Service argued in the alternative that Benderson had no claim on the merits because the

interests reserved in the sales contract merged into the deed and the deed contained no covenants memorializing these reserved interests.

The district court assumed that a restrictive covenant constituting a property right belonging to Benderson arose from the agreement between Benderson and the Postal Service. The district court reasoned that Benderson could not prevent the Postal Service from ultimately acquiring Benderson's property right because of the Postal Service's right to exercise the power of eminent domain in the name of the United States for the furtherance of its official purposes. 39 U.S.C. § 401(9) (1988). The district court concluded that Benderson's remedy, in a situation such as this one which implicates the United States' power of eminent domain, was to require payment of just compensation. The district court ordered the case transferred to the United States Court of Federal Claims because Benderson alleged damages of more than $10,000. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (1988).

## II

On appeal to this court, as before the district court, Benderson asserts that the true nature of its complaint is a claim for breach of contract against the Postal Service. Benderson maintains that the Postal Service breached its contract to build on the property in a specific manner and that it was seeking to enjoin further breach, or, in the alternative, was seeking damages for that breach. The government counters that Benderson misconstrues the nature of its actions. The government contends that because Benderson has no right to enjoin the government from constructing its building, Benderson can only be seeking damages for a taking by inverse condemnation.

## III

This case comes to us pursuant to 28 U.S.C. § 1292(d)(4)(A) which provides for appellate review of interlocutory orders to transfer cases between federal district courts and the Court of Federal Claims due to lack of jurisdiction in the originating forum. 28

U.S.C. § 1292(d)(4)(A) (1988) (*as amended by Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516*); *see Wood v. United States*, 961 F.2d 195, 197 (Fed.Cir.1992). We review the district court's decision to transfer the case to the Court of Federal Claims *de novo* because it is jurisdictional. *See Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed.Cir.1986); *see also Mitchell v. United States*, 930 F.2d 893, 896–97 (Fed.Cir.1991); *see generally Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547 (Fed.Cir.1991).

### IV

The district court recognized that the jurisdictional question before it could only be resolved by determining whether Benderson was seeking relief for a breach of contract by the Postal Service or compensation due from an inverse condemnation by the Postal Service in the name of the United States. The court answered the question by reasoning that the power of eminent domain was implicated in this case because Benderson would not have been able to enjoin the Postal Service from pursuing a direct condemnation action. *See* 39 U.S.C. § 401(9) (1988) (Postal Service has the power "to exercise, in the name of the United States, the right of eminent domain for the furtherance of its official purposes." ); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2879, 81 L.Ed.2d 815 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." ). The Postal Service understandably embraces the analysis of the district court in this appeal while Benderson complains that it should be the judge of the true character of its complaint. Both parties miss the mark, and in so doing fail to focus on the three propositions that direct the proper resolution of this case.

First, the Postal Service, in the name of the United States, may take property for valid public purposes using its power of eminent domain in two ways: through formal condemnation proceedings or through inverse condemnation, that is, by taking physical possession of the property.

Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings. Under the first method—physical seizure—no condemnation proceedings are instituted, and the property owner is provided a remedy under the Tucker Act ... to recover just compensation.

*United States v. Dow*, 357 U.S. 17, 21, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958).

■ Second, the Postal Service may enter into all forms of contracts. 39 U.S.C. § 401(3) (1988). Indeed, the Postal Service may acquire such real property "it deems necessary or convenient" provided that it does so in a "lawful manner." 39 U.S.C. § 401(5) (1988). In contracting to acquire real property, the Postal Service, like any contracting party obtains the right to perform or to breach its contractual obligations. To breach a contract is not unlawful; the breach only begets a remedy in law or in equity. Moreover, when the Postal Service exercises its authority to contract, it does so with the expectation that disputes arising from such contracts may be resolved, without regard to the amount in question, in the United States district courts. 39 U.S.C. §§ 401(1) (waiver of sovereign immunity), 409(a) (United States district courts have original but not exclusive jurisdiction over actions brought by or against the Postal Service) (1988). In fact, the jurisdictional problem posed in this appeal arises because the Postal Service, in contradistinction to other federal entities, may sue and be sued on contract claims in courts other than the Court of Federal Claims. *See, e.g., Pearlstine v. United States*, 469 F.Supp. 1044, 1046 (E.D.Pa.1979).

■ Third, the Postal Service is free to choose whether to exercise its power of eminent domain, either directly or inversely, or its right to breach a contract. Rather than assume as a matter of law that the Postal

Service exercised its power of inverse condemnation simply because the government cannot be stopped should it decide to do so directly, the focus instead should be on which of the two choices the Postal Service made at the time it took the action that now must be construed as either a taking or a contract action. Such a focus is appropriate because the Postal Service should not be able to rely on a retroactive claim of inverse condemnation merely to secure a convenient choice of forum (and perhaps remedy), particularly when Congress has indicated that inverse condemnation by government agencies is disfavored. 42 U.S.C. § 4651(8) (1988); *but see* 42 U.S.C. § 4602(a) (1988) (Section 4651 "create[s] no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.").

Thus, in order to deem the Postal Service's actions in this case a taking achieved through inverse condemnation, the Postal Service must present objective indicia to the district court that it chose this course of action when it made the decision to build the mail facility on the property it purchased from Benderson that was contrary to the restriction stated in Schedule C of Benderson's offer to sell. In the presence of the requisite amount of such evidence, the district court should conclude that jurisdiction over Benderson's complaint lies in the Court of Federal Claims because Benderson is in effect asking for more than $10,000 as compensation for the taking of a property right. The absence of such evidence would demonstrate that the dispute between Benderson and the Postal Service lies in contract, to be resolved by the district court in the exercise of its every-day jurisdiction over contract matters affecting the Postal Service.[2] Because the Postal Service has not yet presented such evidence, we vacate the judgment of the district court and re-

mand for further proceedings on the jurisdictional issue[3] consistent with this opinion.

No costs.

**VACATED AND REMANDED.**

---

**2.** Benderson's first cause of action requests equitable relief in the form of an order to the Postal Service requiring it, *inter alia,* to remove the offending construction, which the Postal Service informs us is now completed. In light of our disposition of this case, we need not decide whether the Postal Service correctly asserts that it is immune from injunctive orders that would limit its actions. We note, however, that the Eighth Circuit has decided to the contrary in an opinion holding that a district court has subject matter jurisdiction over a cause of action re-

questing, *inter alia,* that the landlord Postal Service be enjoined from disturbing the tenant's possession of property it had leased from the Postal Service. *Continental Cablevision of St. Paul, Inc. v. United States Postal Serv.,* 945 F.2d 1434, 1439 (8th Cir.1991).

**3.** On the merits, the court having jurisdiction to hear the case will determine what rights, if any, Benderson retains after it deeded the property to the Postal Service.