INTERSPIRO USA, INC., n.k.a. Pharos Protection USA, Inc. and Pharos Tech USA, Inc., Plaintiffs–Appellees,

v.

FIGGIE INTERNATIONAL INC., Defendant–Appellant.

No. 93–1445.

United States Court of Appeals, Federal Circuit.

March 8, 1994.

Mari M. Gursky Shaw, Dechert, Price & Rhoads, of Philadelphia, Pennsylvania, argued for plaintiffs-appellees. With her on the brief was Martin J. Black. Also on the brief were Dale M. Heist and Albert J. Marcellino, Woodcock, Washburn, Kurtz, MacKiewicz & Norris, of Philadelphia, Pennsylvania.

Regan J. Fay, Jones, Day, Reavis & Pogue, of Cleveland, Ohio, argued for defendant-appellant. With him on the brief was John A. Wasleff. Also on the brief was Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, of Washington, Delaware, of counsel.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Figgie International Inc. appeals from the decision of the United States District Court for the District of Delaware granting the motion of Pharos Protection USA, Inc. to enforce the terms of a settlement agreement requiring Figgie to pay royalties on sales of breathing regulators covered by U.S. Patent 4,361,145 and awarding Pharos attorney fees under 35 U.S.C. § 285 (1988). *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 815 F.Supp. 1488, 27 USPQ2d 1321 (D.Del.1993). We affirm.

## BACKGROUND

The undisputed facts of the instant case are recounted here to the extent they are material to the issues on appeal. On May 9, 1988, Interspiro U.S.A, Inc.[1] filed an action against Figgie in the Delaware district court alleging infringement of U.S. Patent 4,361,-145, entitled "Respirator Mask." That action was dismissed with prejudice on November 13, 1989, pursuant to a settlement agreement entered into by the parties. The settlement

agreement stipulated, among other things, that Figgie would pay royalties on domestic sales of regulators falling within the scope of the '145 patent and that Figgie would permit Pharos to conduct audits of Figgie's records in order to monitor compliance with the agreement.

Some time after dismissal of the infringement suit, Figgie began to manufacture and sell a regulator known as the "E–Z Flo." Through an audit conducted in 1991, Pharos discovered that Figgie was not paying royalties on sales of the E–Z Flo, a product that Pharos believed was subject to the settlement agreement's royalty provisions. Pharos, however, encountered difficulty in conducting a complete audit of Figgie's sales of the E–Z Flo regulator due to Figgie's refusal to provide information requested by Pharos.

On October 16, 1991, Pharos filed a motion requesting that the district court enforce the settlement agreement. Pharos alleged that Figgie had breached the agreement by failing to remit royalty payments on E–Z Flo sales and by failing to supply information requested by Pharos in conducting its audit. Pharos also moved for an award of attorney fees on the ground that Figgie had failed to act in good faith in complying with its obligations under the agreement.

Upon determining that it possessed jurisdiction to entertain Pharos' motion, the district court found that the E–Z Flo infringed claim 1 of the '145 patent, both literally and under the doctrine of equivalents, and that it was thus subject to the royalty payment provisions of the settlement agreement. The court also concluded that Figgie had improperly calculated the royalty payments owing on sales of regulators made through its subsidiary, SSA. The court construed the agreement as requiring that royalties on Figgie's sales made to unaffiliated, "end-user" customers via SSA be based on the invoices from SSA to the end-users and not from Figgie to SSA. Finally, the court found that the case was "exceptional" within the meaning of 35 U.S.C. § 285 (1988) and awarded Pharos attorney fees.

---

1. Interspiro U.S.A., Inc. was the named plaintiff in the original patent infringement action against Figgie. Pharos has since acquired Interspiro's rights under the settlement agreement and is now the party in interest.

## DISCUSSION

### I. Jurisdiction

■ Before we reach the merits, we will dispose of Figgie's preliminary argument that subject matter jurisdiction was improperly retained by the district court to enforce the settlement agreement after dismissal of the original infringement suit. As an appellate body, we have inherent jurisdiction to determine whether a lower tribunal had jurisdiction. *See C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 877, 219 USPQ 197, 200 (Fed. Cir.1983). Whether the district court possessed jurisdiction to entertain Pharos' motion is an issue we review *de novo. See Benderson Dev. Co. v. United States Postal Serv.,* 998 F.2d 959, 962 (Fed.Cir.1993).

Figgie does not dispute that the district court had jurisdiction over the original action pursuant to 28 U.S.C. § 1338(a) (1988) and that the dispute was resolved through a binding settlement agreement. Nor does Figgie deny that the agreement expressly provided that the district court would have "jurisdiction over the implementation of or disputes arising out of the settlement of this action for a period of two (2) years from the date of execution hereof [October 19, 1989]." These facts notwithstanding, Figgie insists that the district court was without jurisdiction to enforce the agreement because the agreement was not legally incorporated into the dismissal order, as is required in the Third Circuit.

■ Under the law of the Third Circuit, a court may retain jurisdiction to enforce an agreement settling a case over which it once presided by incorporating the agreement into an order of dismissal. *See Sawka v. Healtheast, Inc.,* 989 F.2d 138, 141 (3d Cir.1993). Figgie argues that the requisite incorporation of the agreement was not achieved because the order failed to use the express language "incorporate" when referring to the agreement.

Figgie's assertion that there is a "substantial question" concerning jurisdiction borders on the frivolous. In urging its position, Figgie squarely disregards settled law that a court is not required to use explicit language or "any magic form of words" to effect a valid incorporation of an agreement into an order. *See Halderman v. Pennhurst State School & Hospital,* 901 F.2d 311, 317 (3d Cir.) (quoting *McCall–Bey v. Franzen,* 777 F.2d 1178, 1188 (7th Cir.1985)), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). Rather, the court need only manifest an inferable intent to retain jurisdiction. *Id.*

> The dismissal order at issue provided that [t]he parties hereto have entered into an agreement settling the issues before [the district court], and by and through their attorneys, and *pursuant to that agreement* hereby stipulate that the complaint and counterclaim ... be dismissed with prejudice with each party bearing its own costs and attorney fees. [Emphasis added.]

Consistent with the law of the Third Circuit, we conclude that the order did effectively incorporate the terms of the agreement and that it adequately manifested the court's intent to retain jurisdiction for the purpose of enforcing the agreement. Thus, we hold that the district court had jurisdiction to entertain Pharos' motion. We now turn to the merits of the appeal.

■ Figgie makes a number of challenges to the various findings of fact and legal conclusions upon which the district court relied in granting Pharos' motion. We review the district court's decision in this case, as we would any bench trial, for errors of law and clearly erroneous findings of fact. *See* Fed. R.Civ.P. 52(a); *Gould v. Quigg,* 822 F.2d 1074, 1077, 3 USPQ2d 1302, 1304 (Fed.Cir. 1987).

### II. Royalties

#### A. Infringement

■ The parties do not dispute that the settlement agreement requires Figgie to pay royalties on sales of regulators covered by the '145 patent. Thus, the issue whether the E–Z Flo is a regulator subject to royalty payment turns on whether the E–Z Flo infringes the '145 patent. The district court found that all the limitations of claim 1 of the '145 patent were met literally or by an equivalent in the E–Z Flo.

Specifically at issue are two limitations contained in claim 1 that are written in

means-plus-function format: one reciting a "means for establishing gauge pressure" and the other directed to a "detent means." Figgie argues that the district court erred in finding infringement of claim 1 because the court incorrectly identified the structure disclosed in the specification that performed the function of establishing gauge pressure and misconstrued the function performed by the detent means. The district court's construction of the means limitations at issue is reviewed *de novo, see Durango Assocs., Inc. v. Reflange, Inc.*, 843 F.2d 1349, 1356, 6 USPQ2d 1290, 1294 (Fed.Cir.1988), and its finding that the E–Z Flo meets the limitations is reviewed for clear error, *see id.* at 1357, 6 USPQ2d at 1295.

We view Figgie's assertions of error to be unpersuasive, particularly in light of the competent and workmanlike nature of the court's infringement analysis. After consideration of evidence that included expert testimony presented by both parties on the issue of infringement of claims containing means-plus-function limitations, the district court determined that the E–Z Flo performed the identical function recited in each of the two means clauses using a structure disclosed in the specification of the '145 patent or an equivalent thereof. We have carefully considered each of Figgie's assertions and hold that the district court committed no reversible error in concluding that the E–Z Flo literally infringed the '145 patent and was thus a regulator subject to royalty payment. Having thus held, we need not reach the issue of infringement under the doctrine of equivalents.

B. Royalty Calculations

■ Figgie argues that the district court erred in interpreting the provisions of the settlement agreement governing the calculation of royalties on regulators sold by SSA, Figgie's affiliated distributor, to unaffiliated customers. Under this sales arrangement, two separate sales occur, the first from Figgie to SSA and the second from SSA to the unaffiliated customer. The parties do not dispute that pursuant to the agreement, the amount of the royalty is calculated as a percentage of a sales price. However, the price for regulators that Figgie charged SSA was twenty-five percent less than the price that SSA charged to unaffiliated customers, although Figgie's price to SSA was the same as that which Figgie charged independent distributors. Therefore, the dispute centers on which sales price is used to calculate royalties. Figgie contends that the agreement requires that royalties be based on the sales price that Figgie charges SSA, rather than the sales price SSA charges unaffiliated customers, as held by the district court.

Interpretation of an agreement presents a question of law, governed by state contract law. *See S & T Mfg. Co. v. Hillsborough County, Fla.*, 815 F.2d 676, 678, 2 USPQ2d 1280, 1281 (Fed.Cir.1987) ("Questions regarding settlements are governed by state law applicable to contracts in general."). Here the law of New York controls. In resolving this issue, we must give effect to the intent of the parties as memorialized by the terms of the agreement. *See Laba v. Carey*, 29 N.Y.2d 302, 308, 327 N.Y.S.2d 613, 618, 277 N.E.2d 641, 644 (1971).

Under paragraph 3(b) of the agreement, Figgie is obligated to pay royalties on all regulators covered by the '145 patent that are invoiced by Figgie. The agreement further provides that such royalties are to be calculated based on sales made by Figgie to *unaffiliated* customers. Settlement Agreement at ¶¶ 3(b), 1(f). The agreement defines an "unaffiliated customer" as "any Customer in which [Figgie] holds an equity interest of less than 35% of such Customer's total equity and which is not controlled by or under common control with [Figgie]." *Id.* at ¶ 1(e). In addition, the parties expressly stipulated that the terms of the agreement would apply to Figgie as a corporate family, *i.e.*, "itself, its parent, its divisions, its wholly or partly owned subsidiaries, and its wholly or partly owned affiliates."

"Where the intention of the parties is clearly and unambiguously set forth, effect must be given to [that] intent as indicated by the language used." *Slatt v. Slatt*, 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646, 477 N.E.2d 1099, 1100 (1985). By defining royalty-bearing sales as those made by the Figgie corporate family to unaffiliated customers, the parties clearly intended that sales between

members of the Figgie family would not invoke royalty liability under the agreement. The parties do not dispute that SSA, a wholly or partly owned subsidiary of Figgie, does not fall within the definition of an "unaffiliated customer." Hence, where sales of regulators are made by Figgie through SSA, the only sale from the Figgie family to an unaffiliated customer is the one made by SSA. A royalty is therefore properly based on that sale.

We do not agree, as the district court conceded, that this interpretation leads to "an awkward scenario in which a royalty would technically attach before it could be calculated." 815 F.Supp. at 1516, 27 USPQ2d at 1339. A royalty attaches once the sale to the unaffiliated customer is invoiced by SSA, and the amount of the royalty is calculated on that sale. This interpretation gives reasonable meaning to all the parts of the agreement and avoids irreconcilable conflict or surplusage of its provisions. *See Laba,* 29 N.Y.2d at 309, 327 N.Y.S.2d at 619, 277 N.E.2d at 645.

■ Figgie next argues that sales made by SSA may not be included in calculating royalties because the agreement's royalty provisions only apply to sales made by Scott Aviation, another subsidiary of Figgie. The district court found that the agreement was ambiguous on this issue and thus relied on extrinsic evidence in determining that the royalty provisions were not limited to sales by Scott Aviation. Although we reach the same conclusion, we do so because we conclude that the agreement unambiguously dictates that result. Where, as here, the parties' intent is clear, resort to extrinsic evidence is not necessary. *See Slatt,* 64 N.Y.2d at 967, 488 N.Y.S.2d at 646, 477 N.E.2d at 1100.

As discussed above, the terms of the agreement expressly apply to all members of the Figgie corporate family, including SSA, not exclusively to Scott Aviation. Moreover, as the district court recognized, "nowhere in the settlement agreement is the term Scott Aviation used.... It would have been a simple matter to substitute the words, 'Scott Aviation' at appropriate points." 815 F.Supp. at 1516, 27 USPQ2d at 1339. We

agree with the district court that sales made by SSA to unaffiliated customers were properly subject to the agreement's royalty payment provisions.

We therefore affirm the district court's interpretation and hold that Figgie improperly calculated royalties due on sales made by Figgie through SSA by basing them on sales from Figgie to SSA rather than on those from SSA to unaffiliated customers.

## C. Evidentiary Rulings

■ Apart from the substantive issues relating to the settlement agreement itself, Figgie challenges certain evidentiary rulings made by the district court that resulted in the exclusion of witnesses and allegedly hampered Figgie's ability to rely on invalidity and unenforceability defenses. First, we note that in signing the settlement agreement, Figgie waived its right to challenge the validity and enforceability of the '145 patent with respect to products covered by the agreement. Settlement Agreement at ¶¶ 8, 13. The district court determined that "the parties manifested a strong intent that the scope of the ['145] patent should define the coverage of the Settlement Agreement's royalty provisions and indeed the scope of the Settlement Agreement itself." 815 F.Supp. at 1502, 27 USPQ2d at 1328. We cannot say that this finding is clearly erroneous. Therefore, because the infringing E–Z Flo regulator is covered by the agreement, evidence relating to invalidity and unenforceability defenses was properly excluded.

Further, with respect to the district court's exclusion of witnesses and refusal to join an allegedly indispensable party, we have carefully considered the various contentions raised by Figgie and conclude that Figgie has not shown reversible error by the district court. "The [district] court's trial management 'should not be impeded by second guessing at the appellate level except in those rare instances when a clear abuse of discretion is firmly shown.'" *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 943, 15 USPQ2d 1321, 1330 (Fed.Cir.) (quoting *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1549–50, 221 USPQ 1, 10 (Fed.Cir.1984)), *cert. denied,* 498

U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990). Figgie has not demonstrated that the district court abused its discretion in making the disputed evidentiary rulings.

## III. Attorney Fees

■ Figgie argues that the district court improperly awarded Pharos attorney fees under 35 U.S.C. § 285. Figgie asserts that the district court was without authority to award § 285 fees because the instant case was premised on a breach of contract action involving nonpatent issues. Figgie's argument, however, impermissibly elevates form over substance.

Attorney fees under section 285 may be awarded for time incurred in the litigation of legitimate patent claims. *See Machinery Corp. of Am. v. Gullfiber AB,* 774 F.2d 467, 475, 227 USPQ 368, 374 (Fed.Cir.1985). A claim arises under the patent laws if the right to relief "will be defeated by one construction, or sustained by the opposite construction of [the patent] laws." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 807–08, 108 S.Ct. 2166, 2172–73, 100 L.Ed.2d 811 (1988) (citation omitted). Thus, in deciding the applicability of § 285 fees, we look to the rights at issue and whether they properly invoke the patent laws. *See Chemical Eng'g Corp. v. Marlo, Inc.,* 754 F.2d 331, 333–34, 222 USPQ 738, 740 (Fed.Cir.1984). It matters not whether those rights arise in a patent suit or in an action to enforce an agreement settling that litigation.

Under the agreement reached in settlement of the underlying patent infringement suit, Pharos agreed to forego enforcing its right to exclude Figgie from making and selling a product covered by the '145 patent, and, in return, Figgie agreed to pay royalties. Accordingly, the central issue whether Figgie breached the agreement by failing to pay royalties on its E–Z Flo sales turns on whether the E–Z Flo infringes the '145 patent, a matter unquestionably governed by patent law. Moreover, the "nonpatent" issues in this case, such as the assessment of royalties, are "so intertwined with the patent issues" as to make section 285 applicable to the case in its entirety. *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1564, 219 USPQ 377, 387 (Fed.Cir.1983). Thus, Pharos' motion to enforce the agreement wholly asserted a "right to relief necessarily depend[ent] on resolution of a substantial question of federal patent law." *Christianson,* 486 U.S. at 809, 108 S.Ct. at 2173. We agree with the district court that "[t]his is a patent case"[2] and that section 285 is applicable.[3]

■ Having determined that the district court had the authority to award attorney fees under section 285, we now address whether its award was appropriate under the facts of this case. Figgie argues that the district court clearly erred in finding the case "exceptional" and that it abused its discretion in awarding § 285 fees to Pharos.

■ When considering a request for an award of attorney fees under 35 U.S.C. § 285, the trial judge undertakes a two-step inquiry: he or she must determine whether there is clear and convincing evidence that the case is "exceptional," and if so, whether an award of attorney fees to the prevailing party is warranted. *See J.P. Stevens Co. v. Lex Tex Ltd.,* 822 F.2d 1047, 1050, 3 USPQ2d 1235, 1237 (Fed.Cir.1987). The first step concerns a question of fact which we review for clear error, *see Badalamenti v. Dunham's Inc.,* 896 F.2d 1359, 1364, 13 USPQ2d 1967, 1972 (Fed.Cir.), *cert. denied,* 498 U.S. 851, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990),

---

2. In bringing this appeal, Figgie asserts that we have jurisdiction under 28 U.S.C. § 1295(a)(1). That provision confers exclusive jurisdiction to this court over a final decision of a district court whose jurisdiction was based, in whole or in part, on 28 U.S.C. § 1338. Thus, Figgie's own appeal to this court manifests recognition that Pharos' motion to enforce was an action arising under the patent laws.

3. That Pharos no longer owns the patent at issue is of no moment. Attorney fees under § 285 are awarded to a "prevailing party" and they are not restricted to patent owners. *See, e.g., Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050–51, 22 USPQ2d 1577, 1579–80 (Fed. Cir.1992); *Machinery Corp.,* 774 F.2d at 475, 227 USPQ at 374 (Fed.Cir.1985) (prevailing accused infringer may receive § 285 fees). Pharos, having succeeded to the rights of Interspiro, was the prevailing party in this case and thus was eligible to receive § 285 fees.

and the second lies within the discretion of the trial judge, which we review for abuse, *see Mathis v. Spears*, 857 F.2d 749, 754, 8 USPQ2d 1029, 1033 (Fed.Cir.1988).

The district court's finding of an exceptional case was premised on the court's determination that the question of infringement "was not close" and that Figgie demonstrated bad faith in implementing the agreement. Having reviewed the record, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Nor do we conclude that the court abused its discretion in awarding attorney fees in view of the absence here of any underlying error of law, clear error of judgment, or findings which were clearly erroneous. *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1569, 28 USPQ2d 1081, 1091 (Fed.Cir.1993).

Nonetheless, Figgie attempts to assert reversible error by brazenly questioning the competency of the district court judge. Figgie's strategy of casting thinly-veiled aspersions on the experience of the trial judge as a means of winning its case is reprehensible. Although a party is entitled to present its appeal with vigor, it will not succeed by demeaning the trial court.

## CONCLUSION

The district court, having properly retained jurisdiction to enforce the settlement agreement between Pharos and Figgie, did not err in holding that Figgie breached the agreement by failing to remit royalties on sales of E–Z Flo regulators and by not properly calculating royalties due on sales made through SSA. Furthermore, the provisions of 35 U.S.C. § 285 were applicable to this case and the district court did not clearly err in finding this case exceptional, nor did it abuse its discretion in awarding § 285 fees to Pharos.

## COSTS

Costs to Pharos.

***AFFIRMED.***