**J. Leonard SPODEK d/b/a Nationwide Postal Management, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 98–CV–10705–MEL.**

United States District Court,
D. Massachusetts.

Feb. 9, 1999.

---

Stephen H. Oleskey, Hale & Dorr, Boston, MA, for plaintiff.

Andrew L. Freeman, U.S. Postal Service Law Dept., Windsor, CT, for defendant.

### MEMORANDUM AND DECISION

LASKER, District Judge.

Leonard Spodek d/b/a Nationwide Postal Management ("Nationwide") sues the United States Postal Service (the "Postal Service" or "USPS") for unpaid rent and real estate taxes arising out of the Postal Service's holding over after the expiration of its lease at the Dorchester Center Station postal facility in Dorchester, Massachusetts. Nationwide also seeks a declaration as to the legal holdover rental rate. The Postal Service moves to dismiss the plaintiff's action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The motion is denied.

### I.

On December 15, 1965, the Postal Service entered into a lease agreement with Nationwide's predecessor in interest, the John T. Rogan Trust ("Rogan Trust"), for use of the property located at 450 Talbot Avenue in Dorchester, Massachusetts as a postal facility. The lease, as amended, provided for a base term of ten years, commencing January 1, 1966. It also gave the Postal Service four successive five-year renewal options at the end of the base term, each of which was exercised by the Postal Service. The lease also provided that the Postal Service was responsible for payment of all real estate taxes associated with the property.

On March 4, 1995, the Rogan Trust sold the premises to Nationwide. On November 6, 1995, Nationwide notified the Postal Service by letter that the 1965 lease agreement was due to expire on December 31, 1995, and that if the Postal Service continued to occupy the Dorchester facility thereafter, without executing a new lease, the tenancy would be that of a holdover tenancy with a monthly rental rate of $20,000, the Postal Service to be responsible for all expenses, including real estate taxes.

The lease expired December 31, 1995. No further lease agreement has been executed by the parties. Nevertheless, the Postal Service has remained in possession of the premises since January 1, 1996 as a holdover tenant. However, on its unilateral determination, the Postal Service has not paid the holdover rent of $20,000 per month specified by Nationwide in the November 8, 1995 letter. Nor has the Postal Service paid any real estate taxes on the property even though it was obligated to do so under the original lease. Instead, it has paid only $7,362.50 per month, the amount it deems to be the fair market monthly rental value of the premises.

## II.

The Postal Service contends that this Court lacks subject matter jurisdiction of the case. It argues first that this Court lacks jurisdiction because of the provisions of the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (1998), which give exclusive jurisdiction to the Court of Federal Claims over claims against the government for just compensation in excess of $10,000. It submits that by holding over it has exercised its power of eminent domain under Section 401(9) of the Postal Reorganization Act, 39 U.S.C. § 401(9) (1998). Therefore, it asserts that the true character of the plaintiff's claim is for just compensation under the Fifth Amendment against the Postal Service for "inversely condemning" the plaintiff's property, which, because it exceeds $10,000, can only be asserted in the Court of Federal Claims.

Alternatively, the Postal Service alleges that if the plaintiff's action is construed as a breach of contract claim, this Court nevertheless lacks jurisdiction because of the provisions of the Contracts Dispute Act ("CDA"), 41 U.S.C. §§ 601–613, which divests district courts of jurisdiction over government contract disputes, prescribing instead an administrative procedure with appeals to the Court of Federal Claims and the Court of Appeals for the Federal Circuit.

Nationwide responds that neither Tucker Act nor the CDA precludes this Court's subject matter jurisdiction. It argues that its claim is an ordinary breach of contract claim against the Postal Service in its own name based on the Service's failure to vacate the Dorchester facility at the end of the lease term. It follows, according to Nationwide, that the Tucker Act does not apply and that this Court has jurisdiction pursuant to section 409(a) of the Postal Reorganization Act, which confers "original but not exclusive jurisdiction over actions brought by and against the Postal Service in the United States District Courts," 39 U.S.C. § 409(a) (1998).

As to the Contract Disputes Act, Nationwide argues, first, that the present dispute is not covered by the CDA because it relates to a contract—the original 1965 lease—which predates the effective date of the CDA. Second, it asserts that even if the CDA applies, the statute is not an exclusive remedy. It contends that the PRA provides an independent statutory basis for jurisdiction in the district courts over suits to which the Postal Service is a party.

The case thus presents three separate questions of law: (1) whether the plaintiff's action is for compensation for the Postal Service's taking by inverse condemnation or is a contract action such that the PRA provides an independent statutory basis for jurisdiction in this Court; (2) if the claim is for breach of contract, whether the dispute relates to a government contract that is covered by the CDA and therefore only the Court of Federal Claims may hear the case on appeal from administrative adjudication; and (3) if the CDA applies, whether the statute is an exclusive remedy, preempting the PRA.

### III. *Tucker Act*

The Tucker Act grants the Court of Federal Claims exclusive jurisdiction over

any claim against the United States [in excess of $10,0000] founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. §§ 1346(a)(2); 1491(a)(1) (1998).[1] *See also Transcapital Financial Corp. v. Office of Thrift Supervision,* 44 F.3d 1023, 1024 (D.C.Cir.1995).

The Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. §§ 101–5605, waives the sovereign immunity of the Postal Service and authorizes it "to sue and be sued in its official name," 39 U.S.C. § 401(1). It also grants jurisdiction to the district courts. Section 409(a) provides that:

> the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service.

39 U.S.C. § 409(a) (1998).

■ The prevailing view is that the coexistence of the Tucker Act and the PRA provides jurisdiction in the district courts over *contract* actions in which the Postal Service is a party regardless of the amount involved. *See Benderson Development Co., Inc. v. United States Postal Serv.,* 998 F.2d 959, 962 (Fed.Cir.1993) (recognizing that "the Postal Service, in contradistinction to other federal entities may sue and be sued on contract claims in courts other than the Court of Federal Claims"); *Licata v. United States Postal Serv.,* 33 F.3d 259, 264 (3d Cir.1994) (holding that the Tucker Act does not deprive the district court of jurisdiction over contract suits against the Postal Service) (citations omitted); *Jackson v. United States Postal Serv.,* 799 F.2d 1018, 1022 (5 Cir.1986) (noting that before the enactment of the CDA, "the district courts enjoyed concurrent jurisdiction over suits against the [Postal Service] in eo nomine for breach of a [Postal Service] contract, regardless of the amount involved"); *cf. Continental Cablevision of St. Paul, Inc. v. United States Postal Serv.,* 945 F.2d 1434 (8th Cir.1991) (noting that the Tucker Act did not apply to a contract dispute between the Postal Service and plaintiff-tenant because "[t]he Postal Service is a legal entity separate from the United States"). *But see Peoples Gas, Light and Coke Co. v. United States Postal Serv.,* 658 F.2d 1182

(7th Cir.1981) (holding that 39 U.S.C. § 409(a) of the PRA does not provide an independent basis for district court jurisdiction).

Because the Complaint here seeks damages exceeding $10,000, whether the Tucker Act authorizes subject matter jurisdiction over Nationwide's claim in this Court depends upon the nature of its claim. If the Postal Service's holdover constitutes an "inverse" condemnation, the Tucker Act applies and the Court lacks jurisdiction. On the other hand, if Nationwide's claim is a contract action, the Court has jurisdiction pursuant to section 409(a) of the PRA.

■ In *Benderson,* the Federal Circuit held that the district court erred in characterizing the plaintiff's action against the Postal Service as a takings claim and accordingly vacated the district court order transferring the complaint to the Court of Federal Claims. 998 F.2d at 961. The appellate court explained that in determining the nature of a claim against the Postal Service the inquiry should focus on the Service "at the time it took the action that now must be construed as either a taking or a contract action." *Id.* at 963. It commented that "the Postal Service should not be able to rely on a retroactive claim of inverse condemnation merely to secure a convenient choice of forum (and perhaps remedy), particularly when Congress has indicated that inverse condemnation by government agencies is disfavored." *Id.* Finding that there were no "objective indicia" of a decision by the Postal Service to use its condemnation power, the court concluded that the dispute was contract-based and that the district court had subject matter jurisdiction. *Id.*

The ruling applies here. In the instant case, the Postal Service has not pointed to any "objective indicia" that it was exercising its takings power when it decided not to vacate the Dorchester postal facility at the end of the lease term. Indeed, the only evidence the Postal Service offers is its own *post hoc* characterization of its actions in its

---

1. Because this opinion discusses the applicability and exclusivity of the Contracts Disputes Act of 1978 ("CDA") more fully below, it is noteworthy that the "little" Tucker Act, 28 U.S.C. § 1346(a)(2) (1998), specifically excludes claims subject to the CDA from its grant of jurisdiction to the district courts.

memoranda in support of its motion to dismiss. Accordingly, "the absence of such evidence ... demonstrate[s] that the dispute between [plaintiff] and the Postal Service lies in contract." *Benderson*, 998 F.2d at 963. It follows that the Tucker Act does not apply and does not preclude this Court from exercising subject matter jurisdiction.

The cases relied upon by the Postal Service do not establish that the Service's act of holding over constituted in an inverse condemnation claim. *Allenfield Associates v. United States*, 40 Fed.Cl. 471 (Fed.Cl.1998); *Heydt v. United States*, 38 Fed.Cl. 286, 304 (Fed.Cl.1997). While *Allenfield Associates* recognizes that a plaintiff-landlord may bring an inverse condemnation action when the government holds over, it also holds that a landlord, alternatively, may bring an action based on landlord-tenant law. 40 Fed.Cl. at 487. As the court explained:

> [A government]. lessee who holds over after the expiration of the term of the lease and fails to vacate the property can be held liable to the lessor under a breach of contract theory for breaching its contractual duty to vacate the premises at the expiration of the lease, or, in the alternative, can be held liable under a takings theory for temporarily taking the lessor's property without just compensation.

*Id. Heydt* is inapposite because it does not even involve a holdover tenancy. 38 Fed.Cl. at 305–6.

### IV. *Applicability of the CDA*

The Contract Disputes Act, 41 U.S.C. §§ 601–613, was enacted in 1978. The statute delineates a particular procedure for obtaining relief for claims arising from a breach of "any express or implied contract ... entered into by an executive agency for ... the procurement of property, other than real property in being." 41 U.S.C. § 602(a)(1). It specifically identifies the Postal Service as an "executive agency" within the scope of the statute, *id.* § 601(2), and has been interpreted to apply to Postal Service leases. *Jackson v. United States Postal Serv.*, 799 F.2d 1018 (5th Cir.1986); *Forman v. United States*, 767 F.2d 875 (Fed.Cir.1985).

By its terms, the CDA only covers contracts entered into after March 1, 1979. 41 U.S.C. § 601 note (Effective Dates), Pub.L. No. 95–563, § 16, 92 Stat. 2391. For contracts entered into before March 1, 1979, the contractor has the option of seeking relief under the procedure established by the CDA or filing an action in district court under section 409(a) of the PRA. *See Jackson*, 799 F.2d at 1022 (holding that the dispute involved a pre-CDA lease such that the district court's exercise of subject matter jurisdiction was proper); *cf. United States v. Triple A Machine Shop, Inc.*, 857 F.2d 579 (1988) (concluding that the district court had jurisdiction because the dispute concerned a lease agreement with the government that was not covered by the CDA).

Nationwide contends that the CDA does not apply here because the dispute relates to the 1965 lease which is a pre-CDA contract. It explains that, under Massachusetts law, the act of holding over does not automatically result in a new implied lease. It contends that the Postal Service is a tenant at sufferance and that such a tenancy is simply an extension of the original tenancy. Therefore, according to Nationwide, the operative date is 1965, the date of the lease.

The Postal Service answers that the controlling date is January 1, 1996, when it became a holdover tenant. While the Postal Service maintains that federal common law rather than Massachusetts law is determinative, it asserts that the result is the same under either. It suggests that under federal common law,[2] in determining the applicability

---

**2.** Federal courts are authorized to create federal common law applicable to Postal Service leases. *Powers v. United States Postal Serv.*, 671 F.2d 1041, 1043 (7th Cir.1982); *Reed v. United States Postal Serv.*, 660 F.Supp. 178, 181 (D.Mass. 1987). "However, the fact that federal courts have the power to create federal common law ... does not mean that they have to exercise that power." *Powers*, 671 F.2d at 1043. If a state law supplies as good or better rule of decision, then the federal courts can and should apply state law, rather than creating its own rules. *Id.* (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Indeed, federal courts frequently decide to apply state law when real property rules are implicated. *Id.* Accordingly, because the determination of whether or not a tenant's mere act of holding

of the CDA, the focus should be on the specific dispute, which here involves the current fair market rental value of the premises. It asserts that because the dispute between Nationwide and the Postal Service arose when the Service became a holdover tenant, that date—January 1, 1996—is the appropriate date for determining CDA applicability. Alternatively, it argues that under Massachusetts law, it became a tenant at will when it remained in possession after the end of the lease term, and therefore that the parties relationship is governed by implied in fact contract which arose from its holdover tenancy. Accordingly, it asserts that the appropriate date is January 1, 1996, the date it contends a new contract arose by implication from its holding over.

The Postal Service's argument is unpersuasive. Although the lease agreement did expire in 1995 and the Postal Service has since then been a holdover tenant, the instant dispute falls outside the CDA. In *Jackson v. United States Postal Serv.*, 799 F.2d 1018 (5th Cir.1986), the lease between the plaintiffs and Postal Service contained a renewal clause, which the Postal Service had exercised. While the original lease was executed before the CDA became effective, the renewal option was exercised after the CDA went into effect. 799 F.2d at 1022. Citing Corbin on Contracts, the court held that the exercise of the renewal option did not "confect" a new lease such that after the renewal the original pre-CDA lease continued in effect. *Id.* Therefore, it concluded that the dispute involved a pre-CDA lease, the CDA did not apply, and the district court had jurisdiction of the plaintiffs' claim for back rent. *Id.* at 1022–23.

■ Similarly, in the instant case, the Postal Service's unilateral act of holding over beyond the expiration of the original lease did not create a new lease between the parties. Under Massachusetts landlord-tenant law, when a tenant holds over after the expiration of the lease term, either a tenancy at will or a tenancy at sufferance results. *Staples v. Collins*, 321 Mass. 449, 73 N.E.2d 729

(1947); *Ames v. Beal*, 284 Mass. 56, 59, 187 N.E. 99, 100 (1933); *Benton v. Williams*, 202 Mass. 189, 192, 88 N.E. 843 (1909). A tenancy at sufferance occurs when a tenant "merely continue[s] to hold possession of the premises . . . and ha[s] made no contract as to the character of [his] occupancy" after the expiration of the lease term. *Ames*, 284 Mass. at 59, 187 N.E. 99. However, a tenancy at sufferance may subsequently be "converted into a tenancy at will by the implied agreement of the parties, the existence and terms of which may be inferred from their conduct." *C.A. Spencer & Son Co. v. Merrimac Valley Power & Buildings Co.*, 242 Mass. 176, 180, 136 N.E. 391, 393 (1922). Whether a tenancy at will or a tenancy at sufferance was created is ordinarily a question of fact. *Staples*, 321 Mass. at 451, 73 N.E.2d 729; *Moskow v. Robinson*, 276 Mass. 16, 18–19, 176 N.E. 603, 604 (1931).

■ A tenancy at sufferance differs from a tenancy at will in several respects. The relationship between a tenant at will and a landlord is contractual. *Williams v. Seder*, 306 Mass. 134, 137, 27 N.E.2d 708, 710 (1940). It follows that a tenant at will's rental obligation to the landlord is founded in contract. However, "[a] tenant at sufferance has no estate nor title, but only a naked possession, without right and wrongfully, and stands in no privity to the landlord." *Margosian v. Markarian*, 288 Mass. 197, 199, 192 N.E. 612, 613 (1934). Moreover, a tenant at sufferance is statutorily liable to the landlord for the fair market rent for the unauthorized use and occupancy of the premises. *See* Mass.Gen.Laws, ch. 186, § 3 (1998).

■ Accordingly, applying Massachusetts law, the Postal Service became a tenant at sufferance when it held over. Since nothing in the Complaint indicates that the parties have reached an express or implied agreement, which would convert the tenancy into a tenancy at will, the Postal Service remains a tenant at sufferance. Moreover, because under Massachusetts law, the landlord-tenant relationship during the holdover period con-

---

over creates a new implied lease is a question of state law and such a state rule exists, state law is applicable. *But see Forman v. United States*, 767

F.2d 875 (Fed.Cir.1985) (deciding to apply federal law in construing a Postal Service lease).

tinues to be governed by the original lease (except as to those terms which are disputed during the holdover period), *see Boudreau v. Johnson*, 241 Mass. 12, 16, 134 N.E. 359, 361 (1922) (quoting *Walker Ice Co. v. American Steel and Wire Co.*, 185 Mass. 463, 467, 70 N.E. 937, 939 (1904)), it follows that the date the original lease was entered into constitutes the date for determining the CDA's applicability. Because the original lease was executed in December 1965, which preceded the effective date of the CDA, the dispute is not covered by the CDA. Accordingly, Nationwide's invocation of this Court's jurisdiction under section 409(a) the PRA stands.[3]

Moreover, the Postal Service's reliance upon *Semco, Inc. v. United States*, 6 Cl.Ct. 81 (Cl.Ct.1984), for the proposition that the date when the dispute arose, rather than the date of the original lease, is the appropriate date for determining CDA applicability is misplaced. The express language of the CDA provides that statute applies to "contracts entered into" after its effective date. 41 U.S.C. § 601 note (Effective Dates).

## V. *Exclusivity of the CDA*

In light of the finding above that the CDA does not apply in this case, it is not obligatory to reach the question of whether, if the CDA did apply, its remedy is exclusive. Nevertheless the question lurks and it is entitled to brief comment.

The courts that have addressed the issue have split. While the Fifth, Sixth, and District of Columbia Circuits have concluded that the CDA is exclusive, *see Hayes v. United States Postal Serv.*, 859 F.2d 354 (5th Cir.1988); *Campanella v. Commerce Exchange Bank*, 137 F.3d 885 (6th Cir.1998); *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234 (D.C.Cir.1995), the Third (although in dicta), Ninth and Eleventh Circuits, and the District Court for the Eastern District of Pennsylvania have reached contrary conclusions, *see Licata*, 33 F.3d at 264 n. 6; *Wright v. United States Postal Serv.*, 29 F.3d 1426 (9th Cir.1994); *In re Liberty Construction*, 9 F.3d 800 (9th Cir.1993); *Marine Coatings of Alabama, Inc. v. United States*, 932 F.2d 1370 (11th Cir.1991); *Pike v. United States Postal Serv.*, 886 F.Supp. 487 (E.D.Pa.1995).

Upon examination, the opinions concluding that the CDA is exclusive are more persuasive. While the PRA's general "sue and be sued" clause, 39 U.S.C. § 401(1), and express grant of original jurisdiction to the district courts in cases in which the Postal Service is a party, 39 U.S.C. § 409(a), may at first glance suggest that the PRA provides an independent basis for jurisdiction such that CDA is only an alternative, they are not sufficient to override the CDA's exclusivity. Indeed, several factors warrant the conclusion that when the CDA applies, it is exclusive, rather than an alternative remedy for contract claims against the Postal Service. As the court in *A & S Council* opined in concluding that the CDA was exclusive:

> The Contract Disputes Act, however, appears to be the paradigm of a "precisely drawn, detailed statute" that preempts more general jurisdictional provisions. *Brown v. GSA*, 425 U.S. 820, 834, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). It purports to provide final and exclusive resolution of all disputes arising from government contracts covered by the statute....

> By its express terms, the CDA applies to "executive agenc[ies]", 41 U.S.C. § 602(a), which § 601(2) defines as encompassing not only "executive department[s]" but also (1) "independent establishment[s]" as defined in 5 U.S.C. § 104, namely "an establishment in the executive branch [with certain irrelevant exceptions] which is not an Executive department, military department [or] Government corporation", plus (2) a variety of other entities including many of the entities excluded from the definition in 5 U.S.C. § 104, such as Government corporations, the U.S. Postal Service and the Postal Rate Commission. Despite these sweeping terms, it might still be the case that the SBA's sue-and-be-sued clause permitted review of contract disputes outside the CDA framework. Con-

---

**3.** This holding is not inconsistent with the holding in Part III. In that Part, the question concerned the nature of Nationwide's claim against the Postal Service. Here the question involved whether the holdover tenancy, which resulted in a tenancy at sufferance, was converted into a tenancy at will based on either an express or implied agreement between the parties.

gress's explicit exceptions from the CDA, however, render any such inference highly improbable. Although a sue-and-be-sued clause governs the Tennessee Valley Authority, *see* 16 U.S.C. § 831c(b) (1988), Congress expressly exempted a limited class of TVA contracts from the CDA, *see* 41 U.S.C. § 602(b). The exemption would have been wholly unnecessary unless Congress assumed that a sue-and-be-sued clause would not trump the CDA's exclusivity provisions.

*A & S Council,* 56 F.3d at 241–42.

\* \* \* \* \* \*

Because the 1965 lease agreement entered into between the Postal Service and Nationwide's predecessor in interest, the Rogan Trust, predates the effective date of the CDA, this case falls outside the bounds of the CDA. Accordingly, subject matter jurisdiction exists and plaintiff may properly seek relief in this Court. Defendant's motion to dismiss is denied.

It is so ordered.