**SCHAEFER FAN CO., INC. and Ronald E. Schaefer, Plaintiffs–Appellees,**

v.

**J & D MANUFACTURING and Don Redetzke, Defendants– Appellants,**

and

**Northern Wire Products, Inc., Defendant.**

No. 00–1545.

United States Court of Appeals, Federal Circuit.

Sept. 7, 2001.

Stanley E. Siegel, Jr., Rider, Bennett, Egan & Arundel, LLP, of Minneapolis, Minnesota, argued for plaintiffs-appellees. With him on the brief was Eric J. Magnuson. Of counsel was Gerald E. Helget.

Vytas M. Rimas, Kinney & Lange, P.A., of Minneapolis, Minnesota, argued for defendants-appellants. With him on the brief were Ronald Michael Reed, and Mai Lauer.

Before RADER, SCHALL, and DYK, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the District of Minnesota concluded that J & D Manufacturing and Don Redetzke (collectively J & D) breached a settlement agreement with Schaefer Fan Co., Inc., and Ronald Schaefer (collectively Schaeffer). Because the district court properly retained subject matter jurisdiction and properly interpreted the settlement agreement, this court affirms. J & D also appeals the decision of the district court holding J & D in contempt of the court's earlier orders. Because the district court did not err in finding J & D in contempt of court or in awarding damages and attorney fees to Schaefer, this court affirms.

I.

In June 1991, Schaefer and J & D entered into a settlement agreement to resolve a lawsuit brought by Schaefer alleging that J & D infringed its U.S. Patent No. 4,818,183 (the '183 patent). The '183 patent claims a safety guard for industrial-sized air circulating fans. The fan guard prevents human injury (by preventing fingers from reaching the blade) while minimizing the fan guard's impedance to air flow. After entering the settlement agreement, J & D manufactured a fan guard similar to the one involved in the original suit. Schaefer filed suit, alleging a breach of the settlement agreement. The district court granted Schaefer's motion to enforce the agreement on July 15, 1992. On September 8, 1992, the district court found J & D in contempt for noncompliance with the July 15, 1992 Order. The district court appointed a special master to resolve any further disputes.

On October 9, 1992, the special master issued an order interpreting paragraphs 9 and 10 of the settlement agreement and addressing two proposed future designs by J & D. Paragraph 9 of the settlement agreement states:

> Subject to the terms of this Agreement, Schaefer agrees ... not to sue, releases and forever discharges J & D[and] its affiliates ... from manufacturing, using or selling future fan guard products that have a *cylindrical wall comprised of equal diameter, parallel coaxial rings* ("equal diameter, parallel coaxial rings" as commonly known and further defined in the '183 Patent) and *faces comprised of concentric rings* ("faces" as commonly known and further defined in the '183 patent) with: (1) a diameter less than 36″ having concentric face rings spaced no more than 5/8″ from center to center; or (2) a diameter of 36″ or greater having concentric rings

spaced no more than 3/4″ from center to center; or (3) a cylindrical wall and faces with spacing that is unavoidably required or mandated by governmental body or agency.

(Emphases added.) In other words, paragraph 9 allows J & D to manufacture fan guards comprising sidewalls with equal diameter rings and "faces" comprising concentric rings with specific diameters, i.e., faces with specific spacing between the concentric rings.

Paragraph 10 of the settlement agreement, however, states:

> Subject to the terms of this Agreement, J & D[and] its affiliates ... agree and pledge that, if they manufacture, use or sell future fan guard products not yet known or identified, they will ... not manufacture, use or sell a fan guard of the configuration and spacing of paragraph 9 herein together with the other '183 patent claim elements and limitations upon which Schaefer may sue.

Based on paragraph 10, the special master determined that J & D agreed not to add any single element of a '183 patent claim to the facing design allowed under paragraph 9. Thus, according to the special master, the settlement agreement gave Schaefer rights beyond those granted under the '183 patent. Moreover, the special master determined that the phrase "upon which Schaefer may sue" in paragraph 10 encompassed grounds for legal action other than those under patent law, including grounds under the voluntary restrictions accepted by J & D in the settlement agreement.

The special master also found that J & D's proposed "Design 1" constituted a breach of paragraph 10 because although it satisfied paragraph 9 by having the requisite spacing between the concentric face rings, it had a horizontal or straight circumferential sidewall (i.e., an element in claim 7 of the '183 patent—a sidewall comprising "substantially parallel and equal diameter coaxial rings"). In addition, the special master found that proposed "Design 2," which had a slightly convex shaped circumferential wall, also violated paragraph 10 because the sidewall was "substantially straight." As stated by the special master in an additional order dated December 9, 1992, "a substantially straight sidewall of a fan guard is any sidewall to a fan guard which extends at an angle less tha[n] 10° from the horizontal reference line ... an imaginary line drawn perpendicular to both the front and back faces of a fan guard." J & D did not appeal either the October 9 or the December 9, 1992 rulings by the special master.

The present dispute concerns fans allegedly manufactured by J & D, but marketed by Sullivan Supply, Inc., (Sullivan) as the SHOWBARN® and TURBO® models. The district court determined that J & D breached the settlement agreement even though the Sullivan fans had faces comprising spirals rather than concentric rings. The court also found that although the term "rings" in the settlement agreement included closed rings, the plain and ordinary meaning of "rings" also encompassed any "circular or spiral course." Because the Sullivan fan guard faces had a common center, the district court found that those faces comprised concentric rings.

The district court also dismissed J & D's argument that the Sullivan fan guard sidewalls did not comprise equal diameter rings as required under the settlement agreement. Specifically, the district court stated "this issue was decided long ago by the Special Master's [unchallenged] ruling that any sidewalls that extend at an angle of less than 10 degrees from a horizontal reference line are prohibited under the settlement agreement." The court found J & D's conduct to be willful and a second

incident of breach of the agreement. Thus, the district court awarded damages to Schaefer in an amount equal to J & D's profits ($261,500), as well as attorney fees.

J & D appeals to this court under 28 U.S.C. § 1295(a)(1) (1994). J & D argues on appeal that the district court erred in retaining subject matter jurisdiction over the original motion in 1992 to enforce the settlement agreement, and therefore erred in retaining jurisdiction over subsequent motions for contempt. Alternatively, J & D argues that the district court erred in adopting the special master's interpretation of the settlement agreement between Schaefer and J & D because that interpretation was made without reference to the underlying '183 patent. J & D also asserts that the agreement expressly authorizes a fan guard having ⅝ inch face guard spacing, regardless of the angle of the sidewall. According to J & D, neither a spiral face guard, nor an angled sidewall are prohibited under either the '183 patent or the settlement agreement. Additionally, J & D argues that the district court erred by holding J & D in contempt and by calculating damages based on J & D's profits for its fan sales.

## II.

■ At the outset, this court must determine its own jurisdiction to hear the appeal. This court reviews a district court's decision on jurisdiction without deference. *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 481, 39 USPQ2d 1463, 1465 (Fed.Cir.1996). The question in this case is whether the district court correctly retained subject matter jurisdiction to enforce the settlement agreement between Schaefer and J & D.

■ A state court usually interprets and enforces contracts. Federal courts do not have automatic ancillary jurisdiction to enforce a settlement agreement arising from federal litigation. *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "Ancillary jurisdiction to enforce a settlement agreement exists only 'if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal—either by ... a provision "retaining jurisdiction" over the settlement agreement [ ] or by incorporation of the terms of the settlement agreement in the order.'" *Miener v. Mo. Dep't of Mental Health*, 62 F.3d 1126, 1127 (8th Cir.1995) (quoting *Kokkonen*, 511 U.S. at 381, 114 S.Ct. 1673).

In *Miener*, 62 F.3d at 1127–28, the dismissal order at issue acknowledged that "[a]ll matters ... have been settled and resolved," but did not mention the settlement agreement itself or its terms. The Eighth Circuit concluded that a mere reference to the existence of settlement did not incorporate the settlement agreement into the dismissal order. *See also Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 195 (8th Cir.1995) (stating that a dismissal order "reserving jurisdiction" to permit parties to reopen action based on a breach of settlement agreement was not sufficient to retain jurisdiction); *Hagestad v. Tragesser*, 49 F.3d 1430, 1432–33 (9th Cir.1995) (finding that a dismissal order stating "action has been settled" did not incorporate the settlement agreement); *Lucille v. City of Chicago*, 31 F.3d 546, 548–49 (7th Cir. 1994) (determining that a judgment "entered in accordance with" a settlement agreement did not incorporate settlement). "Indeed, although *Kokkonen* does not state how a district court may incorporate a settlement agreement in a dismissal order, the case does suggest the agreement must be 'embodied' in the dismissal order." *Miener*, 62 F.3d at 1128.

In this case, the Stipulation and Order of Dismissal provides that "*pursuant to a confidential settlement agreement,* all

claims in this action may be dismissed with prejudice and on the merits." (emphasis added). Furthermore, the settlement agreement itself expressly states that either party has a right to bring a motion before the district court to enforce the settlement agreement and seek equitable relief and damages.

Thus, this case is strikingly similar to *Interspiro USA v. Figgie International,* 18 F.3d 927, 930, 30 USPQ2d 1070 (Fed.Cir. 1994). In *Interspiro,* the settlement agreement stated that the district court had "jurisdiction over the implementation of or disputes arising out of the settlement of this action." *Id.* Moreover, the dismissal order at issue provided that "the parties hereto have entered into an agreement . . . and . . . *pursuant to that agreement* hereby stipulate that the complaint and counterclaim . . . be dismissed with prejudice." *Id.* (emphasis added). While decided under Third Circuit law, *Interspiro* is instructive in this case. This court in *Interspiro* concluded that the dismissal order effectively incorporated the terms of the agreement. Based on the relevant language in the settlement agreement, as well as the "pursuant to" language in the dismissal order, this court found that the order adequately manifested the district court's intent to retain jurisdiction to enforce the agreement. *Id.* Likewise, this court finds in this case that the settlement agreement is embodied within the dismissal order.

As in *Interspiro,* this court notes that a district court need not use explicit language or "any magic form of words" to effect a valid incorporation of an agreement into an order. *See Halderman v. Pennhurst State Sch. & Hosp., 901 F.2d 311, 317 (3d Cir.1990)* (quoting *McCall–Bey v. Franzen,* 777 F.2d 1178, 1188 (7th Cir.1985) (holding that the district court had jurisdiction to enforce a settlement agreement when the court's "order of dis-

missal states that it is pursuant to the parties' stipulation; the stipulation states that the dismissal is pursuant to the terms and conditions in the settlement agreement; and one of those terms is the sentence ['the parties retain their rights to petition the Court regarding any breach or violation of this agreement.']")). Rather, the court need only manifest its intent to retain jurisdiction. *Id.* The order in this case used the words "pursuant to a confidential settlement agreement" to bring the agreement within the terms of the dismissal. The agreement then expressly authorized each party to enforce the agreement in district court. Thus, the parties themselves agreed to district court jurisdiction upon incorporation of the agreement into the dismissal order. This court therefore determines that the district court properly retained subject matter jurisdiction in this case.

### III.

■ Because J & D did not appeal the special master's two rulings, the district court determined that those rulings governed the interpretation of the settlement agreement. Under that interpretation, the special master prohibited J & D from manufacturing fan guards under paragraph 9 with sidewalls that were "substantially straight," i.e., extending at an angle less than 10° from a horizontal reference line. Based on this ruling, the district court determined that the diameter of the sidewall rings of the SHOWBARN® and TURBO® fans were substantially equal, as precluded under the settlement agreement. In other words, the sidewalls extended at an angle of less than 10°.

The district court also found that the term "rings" in the settlement agreement did not mean only closed rings, but also encompassed spirals, such as those on the SHOWBARN® and TURBO® fan guards.

Because the SHOWBARN® and TUR-BO® fan guards had faces with concentric rings, as described in paragraph 9, and sidewalls with equal diameter rings (i.e., "substantially straight" sidewalls), as prohibited under paragraph 10, the district court concluded that J & D breached the settlement agreement by manufacturing fan guards for Sullivan.

On appeal to this court, J. & D points out that neither "spiral" nor "angle" appears in the settlement agreement or the '183 patent. The relevant language at issue in paragraph 9 and the '183 patent refers to "a cylindrical wall comprised of equal diameter, parallel coaxial rings." In addition, J & D asserts that under the special master's interpretation of paragraph 10, J & D may not ever manufacture a fan guard without breaching the settlement agreement because a "safety guard" is an element of a claim of the '183 patent.

■■■ Even assuming J & D's arguments regarding the special master's interpretation of the settlement agreement have merit, J & D did not challenge the special master's rulings before the district court, nor at any time before appealing to this court. In fact, during a June 2000 hearing at the district court, J & D stated: "[B]oth parties do not dispute the special master's construction." J & D now argues that it "did not believe the Special Master's constructions were ripe for appeal as they were inapplicable to the accused spiral/angled design." To the extent that J & D's arguments depend on an assertion that the special master's interpretation was wrong, however, J & D cannot raise those arguments for the first time on appeal. "With a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal.... In short, this court does not 'review' that which was not presented to the district court." *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420,

1426, 44 USPQ2d 1103, 1108 (Fed.Cir. 1997). Thus, J & D's failure to challenge the special master's interpretation before the district court precludes this court from interpreting the settlement agreement with regard to the "less than 10°" angle of the sidewall.

On the other hand, the special master did not address the term "rings" in the settlement agreement. Thus, the district court noted for the first time that the term "rings" does not encompass only "closed rings"—rings that begin and end in a circumferential path at the exact same point. Citing to Webster's Ninth New Collegiate Dictionary 1016 (Merriam–Webster 1998), the district court gave the term "rings" its dictionary meaning, which included "any 'circular or spiral course.'"

■■■ Generally, interpretation of a settlement agreement is not an issue unique to patent law. *Gjerlov v. Schuyler Labs., Inc.*, 131 F.3d 1016, 1020 (Fed.Cir.1997); *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1561 (Fed.Cir.1985). Accordingly, this court applies the law of the appropriate regional circuit here. In the Eighth Circuit, interpretation of a contract is a question of law subject to *de novo* review. *Realex Chem. Corp. v. S.C. Johnson & Son, Inc.*, 849 F.2d 299 (8th Cir.1988).

Neither the settlement agreement nor the '183 patent expressly defines the term "rings." Thus, this court agrees that the district court properly consulted dictionary meaning to define the commonplace term "rings." In addition to Webster's definition, the American Heritage College Dictionary 1177 (3rd ed.1997) defines "ring" as "a circular object, form, or arrangement with a vacant circular center" or "any of the turns constituting a spiral or helix." The term "concentric" is defined as "having a common center." *Id.* at 288. Consistent with the district court's interpreta-

tion, the term "concentric rings" is broad enough to include spirals, such as those seen in the accused devices. Thus, the district court did not err in interpreting the term "rings" in the settlement agreement as encompassing spirals.

## IV.

 Regional circuit law governs contempt proceedings that do not raise issues unique to patent law. *Spindelfabrik Suessen–Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik AG*, 903 F.2d 1568, 1578, 14 USPQ.2d 1913, 1921 (Fed.Cir.1990). The Eighth Circuit reviews the grant of a contempt order for abuse of discretion. *Wright v. Nichols*, 80 F.3d 1248, 1250 (8th Cir.1996).

J & D argues on appeal that the special master's decisions were not "orders" of the district court until adopted by the district court. Thus, according to J & D, the district court could not simultaneously adopt the special master's decisions and apply those decisions to find J & D in contempt. In addition, J & D contends that it received no notice of the filing of the special master's decisions with the clerk of the court, as required by Federal Rules of Civil Procedure 53(e)(1).

Rule 53(e)(1) expressly requires the special master to file a "report with the clerk of the court and serve on all parties notice of the filing." Fed.R.Civ.P. 53(e)(1) (2000). As mentioned above, however, J & D did not challenge the special master's rulings, under Rule 53(e) or otherwise, before the district court. In fact, J & D expressly did not "dispute the special master's construction." This court does not review that which was not presented to the district court. *Sage Prods., Inc.*, 126 F.3d at 1426. If J & D had Rule 53 objections to the special master's rulings, it had an obligation to raise those objections before an appeal to this court.

Alternatively, while J & D admits that the TURBO® fan has a sidewall angle of 9° from the horizontal reference line, it argues that 9° is within a margin of error of the special master's construction based on a manufacturing tolerance of ±1°. According to J & D, substantial compliance with a court order does not warrant a finding of contempt. J & D also argues that contempt proceedings are not appropriate here because the spiral face guard and the angled sidewall were more than colorably different from the fan guards previously considered by the district court or special master in 1991–92.

 "[B]efore a party can be held in contempt for violating a court order, [it] must have actual knowledge of the order and the order must be 'sufficiently specific to be enforceable.'" *Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir.1994). As mentioned previously, J & D conceded during a district court hearing that it did not dispute the special master's interpretation. Thus, J & D was aware of and was bound by the special master's interpretation of the contract that the sidewall angle must be greater than 10°, not 9°. Moreover, J & D had been held in contempt previously based on the same court order. Despite this earlier contempt finding, J & D did not obtain any opinion of counsel as to whether manufacturing and selling the Sullivan fans would violate the district court's orders.

 Abuse of discretion can be found if the district court relied upon a clearly erroneous finding of fact or an erroneous conclusion of law. *W. Elec. Co. v. Piezo Tech., Inc.*, 860 F.2d 428, 430–31, 8 USPQ.2d 1853, 1855 (Fed.Cir.1988). The record does not disclose any such errors. The district court therefore did not abuse its discretion in holding J & D in contempt for violating the court orders for a second time.

## V.

The district court found that J & D breached the settlement agreement a second time. Further, the district court found that J & D acted willfully by failing to obtain any opinion of counsel on whether the Sullivan fans would breach the agreement and the court's orders. Based on these findings, the district court assessed a penalty greater than the ten-percent royalty applied in the 1992 contempt proceedings. Consequently, the district court calculated Schaefer's damages as J & D's total profit of $261,550 from the sales of the SHOWBARN® and TURBO® fans.

The Eighth Circuit reviews a district court's finding with respect to damages for clear error. *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir.1989). A district court further enjoys broad discretion to award attorney's fees and costs as a remedy. *Hartman*, 884 F.2d at 1107; *Little Rock Sch. Dist. v. Pulaski Co. Special Sch. Dist. No. 1*, 839 F.2d 1296, 1312 (8th Cir.1988). This court finds that the district court did not clearly err or abuse its discretion when awarding damages and attorney fees and costs to Schaefer.

J & D attempts to fault the district court for declining to include J & D's actual costs, including its overhead, in the calculation of damages. While the record of J & D's cost breakdown shows a 33% markup, J & D asserts that its actual profit was 3–4% of gross sales. J & D derives this low percentage, however, from the following testimony of Don Redetzke, President of J & D: "Well, I guess, you know, if you go to overall profit of the company, you're at, you know, three or four percent profit on gross sales." Mr. Redetzke admitted that he never obtained the exact figures from his accountant. Thus, the only real evidence of J & D's total profits came from the "J & D Cost Analysis" documents, which included costs such as labor. Consequently, the district court did not err in relying on the "J & D Cost Analysis" documents to calculate damages.

J & D also seeks reassessment of damages to reflect the profit on the fan guard alone, rather than the entire fan unit. Even assuming the district court was only awarding damages for breach of the settlement agreement, it could assess damages based on the entire functional unit. *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552 (Fed.Cir.1997); *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 23 (Fed.Cir.1984) ("The 'entire market value rule' allows for the recovery of damages based on the value of an entire apparatus. . . ."). In this case, however, the district court intended to assess punitive damages beyond mere compensation. Particularly in light of the second breach by J & D, the district court did not abuse its discretion in calculating contract damages based on J & D's profits for the entire fan.

Lastly, J & D faults the district court for including within its calculation 900 units not manufactured by J & D, as well as TURBO® fans for which Schaefer allegedly did not submit measurements to permit an accurate assessment of breach. Once again, this contention appears for the first time on appeal. Although Mr. Redetzke suggested during trial that he did not manufacture 900 fan guards, J & D did not present any evidence supporting the exclusion of the 900 units from the document disclosure or from the damages calculation. Likewise, J & D did not present any evidence supporting the exclusion of the TURBO® fans from the damages calculations, other than Mr. Redetzke's bald statement that J & D did not manufacture a particular TURBO® fan. A United States Court of Appeal has no authority to supplement a rec-

ord or take additional evidence to correct a failure of proof. On the record under review before this court, the district court properly included the 900 fans and the TURBO® fans in the damages calculation because all of those fans were included in the "J & D Cost Analysis" documents.

In sum, J & D did not show that the district court based its award of damages and attorney fees on clearly erroneous factual findings, legal error, or a manifest error of judgment. *See PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1567, 6 USPQ2d 1010, 1013 (Fed.Cir.1988).

## CONCLUSION

The district court properly retained subject matter jurisdiction in this case. This court affirms the district court's interpretation of the settlement agreement between Schaefer and J & D. This court further finds that the district court did not abuse its discretion in finding J & D in contempt. Finally, the record supports the district court's damages calculations.

## COSTS

Each party shall bear its own costs.

AFFIRMED.

DYK, Circuit Judge, dissenting.

Because I conclude that the district court did not retain jurisdiction over the settlement agreement, I dissent.

After nearly two years of proceedings, on June 6, 1991, the parties executed an agreement settling their claims which provided, *inter alia*, that if one party breached the agreement, "the other party shall have a right to bring a motion before this Court. . . ." There is nothing in the record to suggest that the agreement was submitted to or reviewed by the district court. On July 8, 1991, the district court provisionally dismissed the case in an order stating in pertinent part that "[t]he court

having been advised by counsel that the above action has been settled, IT IS ORDERED that this action is hereby dismissed, with prejudice, the court reserving jurisdiction for sixty (60) days to permit any party to move to reopen this action, for good cause shown, or to submit and file a stipulated form of final judgment." Two days later, on July 10, 1991, the court approved the parties' Stipulation that provided: "[p]ursuant to a confidential Settlement Agreement, all claims in this action may be dismissed with prejudice and on the merits. . . ." The district court's Order of Dismissal accompanying the Stipulation stated: "The foregoing Stipulation is hereby approved and IT IS HEREBY ORDERED that a judgment of dismissal with prejudice be entered forthwith on all claims in the above action." Eleven months later, on June 11, 1992, Schaefer moved the district court to enforce the settlement agreement. Contrary to the majority's opinion, the language of neither the Stipulation and Order of Dismissal nor the parties' Settlement Agreement is sufficient to confer continuing jurisdiction on the district court to enforce the settlement agreement.

In reaching a contrary result, the majority relies on cases predating the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). *See, e.g., Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 18 F.3d 927, 930 (Fed. Cir.1994); *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 317 (3d Cir.), *cert. denied*, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). *Kokkonen* materially changed the judicial landscape. In *Kokkonen*, the parties settled their claims and counterclaims and recited the terms of their agreement on the record before the district judge. 511 U.S. at 376, 114 S.Ct. 1673. The parties then executed a Stipulation and Order of Dismissal with Preju-

dice, which did not retain jurisdiction or refer to the settlement agreement. The district judge approved the stipulation. *Id.* at 377, 114 S.Ct. 1673. One month later, Guardian Life moved the district court to enforce the settlement agreement. The district court entered an enforcement order, asserting its "inherent power" to do so. The Supreme Court held that a federal district court, possessing only the limited jurisdiction authorized by the Constitution and by statute, lacked jurisdiction over an independent action for breach of the settlement agreement. *Id.* at 380–81, 114 S.Ct. 1673. However, the court also made clear that when the parties stipulate to the dismissal of a case and wish to provide the court with jurisdiction over the settlement, they may seek to do so. *Id.* at 381, 114 S.Ct. 1673. In such circumstances, "the court is authorized to embody the settlement contract in its dismissal order (or what has the same effect, retain jurisdiction over the settlement contract) if the parties agree." *Id.* at 381–82, 114 S.Ct. 1673 (parentheses in original). In other words, the court has ancillary jurisdiction over the settlement contract if "the terms of the settlement agreement [have] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381, 114 S.Ct. 1673 (parentheses in original, bracketed text added). However, "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Id.*

We do not have here a situation in which the dismissal order incorporated the terms of the settlement agreement or retained jurisdiction over the agreement, but one in which the judge was merely aware that a settlement agreement existed. Thus, under *Kokkonen*, the district court did not retain jurisdiction.

Even if *Interspiro* and *Halderman* had survived *Kokkonen*, they are clearly distinguishable. The majority finds this case similar to *Interspiro* because there the settlement agreement provided that the district court would have " 'jurisdiction over the implementation of or disputes arising out of the settlement of this action,' " *id.* at 930, and here the parties' agreement provided that a "party shall have a right to bring a motion before this Court" if the other party breached the agreement. It is, however, well-settled that "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant...." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). In *Interspiro*, since "[t]he parties submitted the Settlement Agreement to the [district] Court with a Proposed Stipulated Order dismissing the case pursuant to the terms of the Agreement," *Interspiro*, 815 F.Supp. 1488, 1497 (D.Del. 1993) (emphasis added), the settlement agreement was reviewed by the district court and made of record in the case. This court, therefore, properly found that the district court intended to retain jurisdiction over the settlement agreement by approving the agreement in its dismissal order, 18 F.3d at 930.

Here, because there is no evidence that the district court reviewed the settlement agreement or that it was aware of jurisdiction-granting language in the agreement, it cannot be said that the court intended to retain jurisdiction. Neither the settlement agreement nor any of its terms was entered into the record, and no terms of the agreement were incorporated into the dismissal order. There is no provision in the July 10, 1991, dismissal order providing the district court with continuing jurisdiction. The only mention of continuing jurisdiction is in the court's July 8, 1991,

order which provided for jurisdiction only until September 6, 1991. From this it is inferable that the district court explicitly intended that its jurisdiction *end* on that date.

In *Halderman,* the dismissal of the class action provided: "that the Final Settlement Agreement is APPROVED, and IT IS FURTHER ORDERED that the provisions of the Final Settlement Agreement executed on July 12, 1984 heretofore made a part of the record in this case shall have the full force of law and effect of an order of this Court." 901 F.2d at 317. Because the district court expressly incorporated the settlement agreement and gave notice that it was enforceable as an order of the court, the court retained jurisdiction to enforce it. Here, however, the district court did not make Schaefer's and J & D's settlement agreement an order of the court or incorporate any specific terms of the agreement.

In any event, this case is not governed by Third Circuit law, and *Interspiro* and *Halderman* have no relevance here. Rather, this case is governed by the law of the Eighth Circuit, and recent cases from the Eighth Circuit, decided after *Kokkonen,* make clear that this Stipulation and Dismissal Order does not confer continuing jurisdiction. *Miener v. Mo. Dep't of Mental Health,* 62 F.3d 1126, 1128 (8th Cir.1995) held that:

A dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order. *Hagestad v. Tragesser,* 49 F.3d 1430, 1432–33 (9th Cir.1995) (dismissal stating "action has been settled" did not incorporate terms of settlement agreement); *see also Lucille v. City of Chicago,* 31 F.3d 546, 548–49 (7th Cir.1994) (judgment stating it was "entered in accordance with" settlement agreement did not incorporate settlement).

*Miener,* 62 F.3d at 1128. Here, the parties' stipulation stated only that it was "pursuant to a confidential Settlement Agreement," and the court's order only approved the stipulation and did not even mention the settlement agreement or any of its terms. The language used in the parties' stipulation is quite similar to language of the judgment in *Lucille,* 31 F.3d at 548–49 (where the judgment order by its own terms was "entered in accordance with the Settlement Agreement"), which the Eight Circuit would find inadequate to incorporate the terms of a settlement agreement into the dismissal order. *See also Gilbert v. Monsanto Co.,* 216 F.3d 695, 699 (8th Cir.2000) (finding that district court retained jurisdiction where Stipulation of Dismissal explicitly "incorporated" settlement agreement and provided that "this Court shall retain jurisdiction to enforce the terms of the settlement agreement.")

While "magic words" are not required for a court to retain jurisdiction, the Eighth Circuit holdings in *Gilbert* and *Miener* clearly articulate the difference between language that can and cannot confer continuing jurisdiction on the district court over the enforcement of a settlement agreement. Here, the district court itself recognized this difference, as the July 8, 1991, order expressly retained jurisdiction over the case for a very limited period, while the July 10, 1991, dismissal order merely acknowledged the existence of the parties' settlement agreement. In this case, the required retention of jurisdiction is entirely lacking.

For these reasons, I respectfully dissent.