NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1500

MEDPOINTE HEALTHCARE, INC.,
(doing business as Wallace Pharmaceuticals),

Plaintiff-Appellee,

v.

WALTER E. KOZACHUK,

Defendant-Appellant.

Richard H. Brown, III, Day Pitney LLP, of Morristown, New Jersey, for plaintiff-appellee.  With him on the brief was Anthony J. Marchetta.

Walter E. Kozachuk, of Catonsville, Maryland, pro se.

Appealed from:  United States District Court for the District of New Jersey

Judge Mary L. Cooper

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1500


MEDPOINTE HEALTHCARE, INC.,
(doing business as Wallace Pharmaceuticals),

Plaintiff-Appellee,

v.

WALTER E. KOZACHUK,

Defendant-Appellant.

Appeal from the United States District Court for the District of New Jersey in Case No. 3:04-CV-02019, Judge Mary L. Cooper.

_____

DECIDED:  April 6, 2010

_____


Before LOURIE, GAJARSA, and MOORE, Circuit Judges.

PER CURIAM.

Walter E. Kozachuk appeals from an order of the United States District Court for the District of New Jersey enforcing a settlement agreement in which Dr. Kozachuk agreed to transfer ownership of U.S. Patents 5,728,728 ("the '728 patent"); 5,942,540 ("the '540 patent"); and 6,515,019 ("the '019 patent") to MedPointe Healthcare, Inc. ("MedPointe").  We affirm.

## BACKGROUND

Between February 1, 1993, and October 4, 1994, Kozachuk worked for MedPointe's predecessor, Carter-Wallace, Inc., supervising clinical studies of the drug

Felbamate. Under the terms of his employment agreement, Kozachuk agreed to assign to Carter-Wallace and its successors any and all inventions, discoveries, or improvements made, discovered, or conceived by him during his employment. Eighteen months after leaving Carter-Wallace, on April 10, 1996, Kozachuk filed the first in a series of patent applications, which issued as the '728, '540, and '019 patents, all of which claim clinical uses of Felbamate to treat neurological indications. On April 28, 2004, MedPointe brought suit against Kozachuk claiming ownership of the '728, '540, and '019 patents based on Kozachuk's breach of his employment agreement and duty of loyalty and seeking to correct the patents' inventorship under 35 U.S.C. § 256.

After years of litigation and with trial set for May 19, 2008, the parties participated in a settlement conference before Magistrate Judge Bongiovanni on May 14, 2008. The parties negotiated for over four hours, after which the court placed the material terms of a settlement agreement on the record. The terms included: (1) a $60,000 payment by MedPointe to Kozachuk; (2) a transfer of all right, title, and interest in Kozachuk's patents to MedPointe; (3) an agreement to arbitrate any disputes over Kozachuk's ownership of a pending U.S. patent application related to Felamate; and (4) a reservation of rights by MedPointe with respect to any foreign patents or patent applications. Both MedPointe's representative and Kozachuk assented to those terms on the record, and the parties agreed that MedPointe's counsel would incorporate them, along with other ancillary terms, into a written settlement agreement.

On June 16, 2008, MedPointe's counsel provided Kozachuk with a draft Settlement Agreement and Release and a draft Assignment ("the Settlement Documents"). Kozachuk, however, refused to sign the Settlement Documents, accusing

2009-1500

-2-

his counsel, Joseph Posillico, of inadequate representation and misleading him into a settlement. On October 29, 2008, having still not received executed Settlement Documents from Kozachuk, MedPointe filed a motion to enforce the settlement agreement and for sanctions against Kozachuk.

On March 4, 2009, Magistrate Judge Bongiovanni issued an order recommending that the district court grant MedPointe's motion to enforce the settlement, concluding that an enforceable settlement had been reached on May 14, 2008, despite the lack of a written document. MedPointe Healthcare, Inc. v. Kozachuk, No. 04-2019, 2009 WL 540680, at *4-*5 (D.N.J. Mar. 4, 2009) ("Report and Recommendation"). Judge Bongiovanni found that Kozachuk's claims that he did not understand the proceedings and did not intend to settle "lack credibility," as he is a well-educated and sophisticated individual who is familiar with the litigation process and the court had made clear the proceedings' purpose before putting the settlement terms on the record. Id. at *4. The judge also rejected Kozachuk's claim that a voir dire was necessary. Id. at *5. Kozachuk filed an objection to the Report and Recommendation pro se.

On June 15, 2009, the district court, after a de novo review of the record, adopted the findings and conclusions of the Report and Recommendation. MedPointe Healthcare, Inc. v. Kozachuk, No. 04-2019, 2009 WL 1662226 (D.N.J. June 15, 2009). And on June 30, 2009, the court ordered Kozachuk to execute the Settlement Documents and imposed sanctions on Kozachuk of $32,555.13, representing MedPointe's reasonable attorneys' fees and costs incurred enforcing the settlement.

2009-1500

-3-

MedPointe Healthcare, Inc. v. Kozachuk, No. 04-2019, slip op. at 1-2 (D.N.J. June 30, 2009). Kozachuk appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

This court reviews a decision to enforce a settlement agreement, an issue not unique to patent law, under the law of the appropriate regional circuit. See Schaefer Fan Co. v. J & D Mfg., 265 F.3d 1282, 1288 (Fed. Cir. 2001). Under Third Circuit law, we review the district court's factual findings regarding the existence of an enforceable settlement agreement for clear error. See Tiernan v. Devoe, 923 F.2d 1024, 1031 n.5 (3d Cir. 1991). "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Brisbin v. Superior Valve Co., 398 F.3d 279, 285 (3d Cir. 2005) (internal citations omitted).

Kozachuk makes three arguments on appeal. First, he argues that because he did not understand the proceedings on May 14, 2008, and had no intention of settling, there was no "meeting of the minds" necessary to effectuate a settlement agreement. Kozachuk contends that the transcript of the proceedings does not clearly reflect his agreement to the settlement terms, faults the court for failing to engage him in a comprehensive voir dire, and claims that his actions demonstrate that he did not believe he had settled. Alternatively, Kozachuk next argues that the settlement terms are unconscionable, requiring him to transfer patents assertedly worth millions of dollars to MedPointe for a paltry $60,000 simply because MedPointe's predecessor briefly employed him over a decade ago. Finally, Kozachuk alleges that the settlement is unenforceable because of unseemly conduct by his attorney, and specifically because,

2009-1500

-4-

after inadequately preparing the case for trial, Posillico coerced him into settling by adopting an overwhelmingly negative assessment of the case and threatening to withdraw as counsel.

MedPointe responds that the district court did not clearly err in finding that Kozachuk entered into an enforceable settlement agreement at the conference on May 14, 2008. Specifically, MedPointe contends that the transcript of the conference, in addition to Kozachuk's e-mails and sworn statements, demonstrate that the parties agreed to the essential terms of a settlement on May 14, 2008. Further, according to MedPointe, a voir dire was unnecessary given the Magistrate Judge's active participation in the negotiations and Kozachuk's sophistication and familiarity with the litigation process. With regard to the enforceability of the settlement terms, MedPointe argues that Kozachuk did not make the argument below, but regardless, the argument lacks merit as there is no evidence that $60,000 in exchange for the transfer of Kozachuk's three patents is in any way disproportionate, let alone unconscionable. Finally, MedPointe argues that there is no evidence that Kozachuk's counsel intended to or did in fact pressure Kozachuk into settling by threatening to withdraw.

We agree with MedPointe and reject all three of Kozachuk's arguments. Under New Jersey law, which governs a settlement agreement made in New Jersey, a settlement agreement is a binding contract that is enforceable regardless whether it has been reduced to writing. United States v. Lightman, 988 F. Supp. 448, 459 (D.N.J. 1997). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party

2009-1500

-5-

later reneges." Lahue v. Pio Costa, 623 A.2d 775, 788 (N.J. Super. App. Div. 1993). In this case, the district court did not clearly err in finding that the transcript of the May 14, 2008, settlement conference established that Kozachuk had entered into an enforceable settlement agreement with MedPointe. Report and Recommendation at *4.

The transcript of the proceedings clearly evinces both parties' intent to settle the suit brought by MedPointe on specific terms. At the conclusion of the May 14, 2008, conference, the Magistrate Judge summarized the purpose of the day's proceedings, concluding that "it appears that we have terms that we'd like to place on the record." J.A. 75. Judge Bongiovanni then went on to describe the process, explaining how MedPointe's counsel would state the terms of the settlement for the record and that the court would then ask each party for its agreement. Specifically, the court stated:

> So, Mr. Brown [MedPointe's counsel], as plaintiff, I would ask you [to place the terms on the record]. And then, Ms. French [MedPointe's representative] I would ask you if you concur in the terms. And then I would turn to you, Mr. Posillico, likewise ask you if – make sure we have all of our bases covered and then ask Dr. Kozachuk if he agrees as well.

Id. After assent by MedPointe's counsel, MedPointe's representative, and Kozachuk's counsel, the court asked Kozachuk, "Do you agree as well?" Id. at 75-78. And Kozachuk replied, "Yes." Id. at 78. At no time did Kozachuk ask for clarification or in any way indicate that he did not understand that he was agreeing to a settlement on the terms stated by MedPointe's counsel. In light of Kozachuk's high level of education, his obvious familiarity with the litigation process, and his failure to express any lack of understanding except after the fact, the court did not clearly err in finding that a binding settlement agreement had been formed.

Moreover, Kozachuk's assertions that he never intended to settle and did not realize that he had settled are directly contradicted by evidence of record. For example, in a sworn declaration, Kozachuk recalls a conversation between Judge Bongiovanni and his counsel on the day of the conference and states, "I was prepared to negotiate a settlement, if possible." Id. at 274. And, after receiving a bill from his counsel, Kozachuk replies that, "We settled this case for $60K." Id. at 182. Thus, both before and after the settlement conference, Kozachuk clearly understood the purpose and consequences of the proceedings.

We also reject Kozachuk's claim that the settlement terms are unconscionable. Although Kozachuk raised the issue for the first time on appeal, and thus it is not properly before us, Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997), we note that the argument is wholly without merit. Courts ordinarily do not set aside a settlement for inadequate consideration unless "the inadequacy of consideration is grossly shocking to the conscience of the court." Pascarella v. Bruck, 462 A.2d 186, 190 (N.J. Super. App. Div. 1983). Kozachuk asserts that the '728, '540, and '019 patents are worth millions of dollars, but he presents no evidence to establish their worth. Simply nothing in the record evinces an inadequacy of consideration, let along an inadequacy that shocks the conscience.

Finally, we reject Kozachuk's claim that his attorney's behavior coerced him into accepting the settlement. The transcript of the May 14, 2008, conference lacks any indication that Kozachuk and his counsel differed over the settlement or its terms. Furthermore, it strains credibility to think that Kozachuk, who had already retained new counsel once during the litigation and who worked with sophisticated business advisors,

felt that he had no choice but to settle because his counsel indicated a desire to withdraw in light of their disagreements over the merits of the case. Moreover, to the extent that Kozachuk claims inadequate representation by his chosen counsel, it is well-established that a party is bound by the actions of his counsel and may not after the fact disavow counsel's actions on his behalf. Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962).

Accordingly, we affirm.